FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2025-0764
_____

CARLOS MANUEL GARCIA, M.D.,

    Appellant,

    v.

DEPARTMENT OF HEALTH,

    Appellee.

_____


On appeal from the Board of Medicine.
Amy Derick, M.D., Chair.



July 15, 2026

TREADWELL, J.


    Appellant Carlos Manuel Garcia, M.D., appeals a Final Order from the Board of Medicine revoking his medical license. Because the Board did not err by concluding as a matter of law that Appellant committed medical malpractice, we affirm. We also conclude that he lacks standing to assert his constitutional challenges.

I.

    Appellant focused his medical practice on alternative and complementary healthcare, including chelation therapy, hormone replacement, intravenous vitamins and antioxidants, detoxification, and similar modalities. Some of his patients were suffering from various forms of cancer.

In 2021 and 2022, the Department of Health filed administrative complaints against Appellant, alleging that he had committed medical malpractice in various ways. Specifically, the Department accused Appellant of treating his cancer patients with intravenous cesium chloride, an unproven treatment that posed certain dangers.[1] The Department also alleged that Appellant did not monitor his cancer patients' progress or their response to treatments, nor did he refer them to appropriate specialists for their conditions. In addition to the malpractice allegations, the Department charged Appellant with failing to keep adequate medical records. He timely petitioned for a formal hearing before an administrative law judge (ALJ).

Following an evidentiary hearing, the ALJ issued a Recommended Order and found that the dangers of cesium chloride were not sufficiently known before July 2018, therefore Appellant did not deviate from the standard of care during the preceding years when he administered it. But the ALJ found that the Department's expert "credibly testified" that Appellant "failed" to properly diagnose, track, or monitor his cancer patients or refer them to specialists for additional testing or treatment. The ALJ also found that he failed to maintain adequate medical records.

Instead of concluding, however, that Appellant committed malpractice based on the above failures, the ALJ observed that there was no evidence that any of Appellant's patients were actually harmed as a result of his treatments. Due to the absence of any injury, the ALJ concluded that Appellant did not commit medical malpractice in violation of section 458.331(1)(t), Florida Statutes. The ALJ relied exclusively on *State Board of Medical Examiners of Florida v. Rogers*, 387 So. 2d 937 (Fla. 1980), for this injury requirement. Finally, the ALJ recommended six months of probation and a $30,000 fine for the inadequate medical records.

Both the Department and Appellant filed exceptions to the Recommended Order. The Board of Medicine then issued a Final Order and granted the Department's exception to the ALJ's legal conclusion that discipline for medical malpractice requires a

---

[1] The FDA subsequently published a warning about the dangers of using cesium chloride.

2

patient's injury. Rejecting that requirement, the Board substituted its own conclusion, which it described as more reasonable, that Appellant violated section 458.331(1)(t) based on the ALJ's findings of fact that Appellant failed to properly diagnose, track, or monitor his cancer patients or refer them to specialists. The Board revoked Appellant's license, and he timely appealed.

## II.

Appellant argues that the ALJ was correct in deciding that the Board cannot revoke his license for medical malpractice because none of his patients were harmed by his deviations from the standard of care. He relies primarily on the medical malpractice tort statute, section 766.102, Florida Statutes, which requires the element of an injury in any action for damages, and on *Rogers*. We discuss each below.

## A.

The Board of Medicine derives its authority from section 458.331(1)(t), Florida Statutes, to revoke Appellant's license for medical malpractice.[2] That section authorizes disciplinary action against a licensee for "committing medical malpractice as defined in s. 456.50." § 458.331(1)(t)1., Fla. Stat. Section 456.50 defines "medical malpractice" as "the failure to practice medicine in accordance with the level of care, skill, and treatment recognized in general law related to health care licensure," which is equal to "the standard of care specified in s. 766.102." § 456.50(1)(e), (g), Fla. Stat. Section 766.102, in turn, defines the standard of care as follows:

> The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and

---

[2] If a medical doctor commits three or more incidents of medical malpractice, the Florida Constitution requires the State to revoke that doctor's license. Art. X, § 26, Fla. Const. Appellant's argument does not require us to consider this constitutional authority.

3

appropriate by reasonably prudent similar health care providers.

§ 766.102(1), Fla. Stat.

In neither of the above definitions from chapters 456 and 458, which together govern the regulation of medical doctors, is found a prerequisite of patient harm before the Board can exercise its authority to discipline a doctor for medical malpractice. The applicable definition of "medical malpractice" in section 456.50 only incorporates the "standard of care" from the tort statute, section 766.102, but does not incorporate any other aspect of the tort statute, such as the injury and causation elements.

Although the Board is instructed in section 458.331 to "give great weight" to the medical malpractice tort statute when enforcing discipline, *see* § 458.331(1)(t)1., Fla. Stat., we do not read this language to incorporate the injury and causation elements necessary for tort actions. The term "great weight" is not indicative of any brightline requirement. In other words, an injury requirement would not be a matter of "weight" in any analysis but would create a distinct threshold for regulatory authority based on a condition that either exists or does not. Hence, the instruction to "give great weight" cannot support a blanket injury requirement for professional discipline.

Furthermore, the Legislature's stated purposes for the regulatory provisions in chapters 456 and 458 reveal its goal of preventing harm to patients in the first place. *See* § 458.301, Fla. Stat. (recognizing that "the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners" and aiming to prohibit practitioners who "present a danger to the public"); § 456.003, Fla. Stat. (explaining that regulation is "only for the preservation of the health, safety, and welfare of the public" because "unregulated practice can harm or endanger the health, safety, and welfare of the public"). Appellant's contention that actual patient harm must precede regulatory action disregards the stated purposes of the Legislature's regulatory scheme to prevent harm and preserve the public health. Accordingly, the Board has authority to discipline Appellant for medical malpractice even if his deviations from the standard of care did not harm his patients.

4

## B.

Appellant next contends that his substantive due process right "to practice medicine" cannot be infringed without proof of patient harm. He relies, as did the ALJ, on *State Board of Medical Examiners of Florida v. Rogers*, 387 So. 2d 937 (Fla. 1980). We decline to read *Rogers* so broadly.

Although the supreme court in *Rogers* recognized a physician's "right to practice medicine," 387 So. 2d at 939, it did not establish a harm prerequisite for regulatory discipline in general. Under the particular facts of that case, the supreme court concluded that the record did not demonstrate that Dr. Rogers's unproven treatment for arteriosclerosis was harmful to patients. *Id.* As a result, the Board's discipline of Dr. Rogers was an arbitrary and unreasonable exercise of police power because it did not "have a reasonable relationship to the protection of the health and welfare of the public." *Id.* at 938–40.

*Rogers* does not stand for the broad proposition that a physician may continue to practice medicine below the standard of care and without fear of discipline, until a patient is actually harmed. By its own terms, *Rogers* was a decision "under the particular facts" of the case that considered disciplinary action in the context of an unproven treatment. *Id.* at 937, 939. Here, the Board did not discipline Appellant for his use of an unproven treatment, such as his cesium chloride treatments, therefore the *Rogers* case is simply inapplicable on its facts.

Moreover, the supreme court in *Rogers* only found that the Board's disciplinary action was arbitrary and unreasonable because the record did not even show the "harmfulness" of the unproven treatment. *Id.* at 939. In other words, the case turned on a lack of danger, not on a lack of actual harm to a patient.

Here, even if *Rogers* were factually applicable, Appellant has not argued that his failure to monitor, track, or refer his patients posed no danger or harmfulness to them. For that reason, he cannot argue pursuant to *Rogers* that the Board's discipline was an arbitrary or unreasonable infringement on his right to practice medicine.

5

Accordingly, we agree with the Board's rejection of an injury requirement, which the ALJ erroneously imposed based on a misapplication of *Rogers*, and affirm the Board's disciplinary action to revoke Appellant's license.

III.

Finally, Appellant claims on appeal that section 456.073(5) is facially unconstitutional. He argues that it (1) gives the Board unbridled discretion in violation of the nondelegation doctrine and (2) violates his procedural due process rights.

Section 456.073(5) states, in pertinent part,

> The determination of whether or not a licensee has violated the laws and rules regulating the profession, including a determination of the reasonable standard of care, is a conclusion of law to be determined by the board, or department when there is no board, and is not a finding of fact to be determined by an administrative law judge.

§ 456.073(5), Fla. Stat. Appellant does not challenge the entirety of the above provision, only the clause "including a determination of the reasonable standard of care."

This challenged language was added to section 456.073(5) in 2003. *See* Ch. 2003-416, § 20, Laws of Fla. Prior to its addition, Florida courts had consistently held that whether an individual had deviated from the standard of care was a finding of fact for the ALJ to make, not a conclusion of law. *See, e.g.*, *Gross v. Dep't of Health*, 819 So. 2d 997, 1003 n.8 (Fla. 5th DCA 2002) (collecting cases). Appellant argues that the 2003 statutory revision, making the determination of the standard of care a legal conclusion by the Board instead of a factual finding by the ALJ, untethers the Board's decision-making away from any discernable guidelines in the statutory text and away from the evidentiary record in a case.

Before we can address the merits of Appellant's constitutional challenge, we first determine whether Appellant has standing under the Administrative Procedure Act (APA) to assert his challenge. *See Escambia Cnty. Sch. Bd. v. Warren*, 337 So. 3d 496,

6

498 (Fla. 1st DCA 2022) (applying the principle that "an appellate court may raise standing sua sponte even where neither party raises the issue" in an administrative case).

The APA entitles a party "who is adversely affected by final agency action" to seek judicial review. § 120.68(1)(a), Fla. Stat. Under longstanding Florida Supreme Court precedent, this entitlement to judicial review allows an "affected party" to challenge the facial constitutionality of a statute authorizing an agency action by raising the challenge in the district court on direct review. *Key Haven Associated Enters., Inc. v. Bd. of Trs. of Internal Improvement Tr. Fund*, 427 So. 2d 153, 157 (Fla. 1982). However, "the record should clearly indicate the appellant's standing to raise the issue of the facial unconstitutionality of a specific section of the law." *Sasso v. Ram Prop. Mgmt.*, 431 So. 2d 204, 208 (Fla. 1st DCA 1983), *approved,* 452 So. 2d 932 (Fla. 1984). To have such standing, the appellant must be "injuriously affected by the feature complained of." *Id.* (quoting 16 C.J.S. *Constitutional Law* § 76 at 243–44 (1956)).

The record here does not establish Appellant's standing to challenge the constitutionality of the feature of section 456.073(5) he complains of. Appellant contends that section 456.073(5) unconstitutionally shifts the determination of the standard of care from the ALJ, as a finding of fact, to the Board of Medicine, as a conclusion of law. But Appellant has failed to demonstrate on appeal that the Board of Medicine, not the ALJ, made the determination of the standard of care under this record.

The Board's Final Order did not discuss, reference, or even mention the standard of care. Rather, it adopted the findings of fact set forth in the ALJ's Recommended Order, including the findings that Appellant "failed" to monitor and track his patients' cancer and "failed" to refer them to specialists. By finding that Appellant "failed" to monitor, track, and refer his patients, the ALJ implicitly determined that Appellant did not meet the standard of care with respect to those patients and those failures. The Board did not attempt to find or rule otherwise. It did not alter or amend the ALJ's findings or legal conclusions with respect to the standard of care at all. The Board merely reversed the ALJ's erroneous legal conclusion that section 458.331(1)(t) requires patient harm. *See*

7

*supra* Part II. This reversal, however, did not implicate the challenged provision of section 456.073(5) with respect to the standard of care.

Accordingly, Appellant has not been "adversely affected" by the challenged portion of section 456.073(5) and therefore does not have standing for the judicial review of its constitutionality. § 120.68(1), Fla. Stat.; *see also Sandstrom v. Leader*, 370 So. 2d 3, 4 (Fla. 1979) ("Fundamental constitutional principles dictate that one may not challenge those portions of an enactment which do not adversely affect his personal or property rights.").

For the foregoing reasons, we affirm the Final Order of the Board of Medicine.

AFFIRMED.

KELSEY and LONG, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Thomas W. Sculco and Shannon McLin of Florida Appeals, Orlando, for Appellant.

Sarah Young Hodges, Chief Appellate Counsel, Florida Department of Health, Tallahassee, for Appellee.